**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEVON MD LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 19-5378 |
| | : | |
| **STEVEN F. DEMAIO,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                       **April 20, 2020**

  Four months ago, we found a basis to exercise personal jurisdiction over two Connecticut businessmen to respond to a Pennsylvanian's claim of partnership diversion of assets in Connecticut after the businessmen travelled to Pennsylvania and had a direct relationship with the plead de facto partnership with the Pennsylvanian. The Pennsylvanian now reaches to sue a later-formed Connecticut entity for also diverting the de facto partnership's assets. But there is a big difference: the Pennsylvanian fails to plead and offers no evidence the Connecticut entity did anything in Pennsylvania or particularly relating to this earlier de facto partnership. In response to the Connecticut entity's undisputed affidavit of no contacts with Pennsylvania or this de facto partnership, the Pennsylvanian did not seek discovery or adduce facts; it instead cited social media and emails possibly referencing a possible later Connecticut entity. These conclusory suppositions do not allow us to exercise personal jurisdiction consistent with due process. We cannot exercise personal jurisdiction in a partnership diversion claim over a non-partner Connecticut entity simply because the two Connecticut businessmen thought of forming this entity at some point. We grant the Connecticut entity's motion to dismiss for lack of personal jurisdiction over it. We also see no basis to sever a viable claim and transfer to the District of Connecticut.

I.      **Alleged facts**

Pennsylvanian Devon MD LLC is a medical device distributor of "[d]eep [v]ein [t]hrombosis sleeves, crutches, splints, braces, and various orthotics."[1]  Messrs. Steven DeMaio and James Nardella are adult Connecticut residents.[2]  Alledran Med is a limited liability company registered by Mr. Nardella under the laws of Connecticut in September 2017 and joined by Mr. DeMaio in July 2019.[3]

### *Devon MD and Messrs. DeMaio and Nardella form a partnership.*

In 2019, Devon MD formed a partnership Messrs. DeMaio and Nardella after "oral agreements reached in the Commonwealth of Pennsylvania" for Messrs. DeMaio and Nardella to market Devon MD's medical devices to post-procedure patients of orthopedic surgery.[4]  This oral partnership hoped to form supply contracts with Connecticut orthopedic surgery practices who would prescribe Devon products to their patients.[5]

As we understand this business from Devon MD's amended complaint, if a medical practice under contract prescribed a Devon MD product to a patient, one of two billing companies—Dynamic Medical or USA Medical—would bill the patient's insurer for the product and then remit payment to the Partnership.[6]  Devon MD had billing contracts with Dynamic Medical and USA Medical predating any contact with Messrs. Nardella and DeMaio.[7]

Devon MD incurred a series of expenses to assist marketing efforts in Connecticut.  After Messrs. DeMaio and Nardella requested Connecticut office space to store supplies, Devon MD leased a space in Glastonbury, Connecticut for a three year term at an average $1,545.41 rent per month.[8]  Mr. DeMaio signed the lease as Devon MD's "VP of Operations."[9]  Devon MD spent $9,785.30 to furnish the Connecticut office space and hired a staffer to work in the office for $5,833.33 per month.[10]

### *Devon MD's relationship with Glastonbury Surgery Center.*

In May 2019, Devon MD contracted with Glastonbury Surgery Center in Glastonbury, Connecticut for the Partnership to inventory Devon MD medical equipment, including supplying Devon MD's deep vein thrombosis sleeves.[11] Devon MD's Chief Executive Officer John A. Bennett, MD signed the contract for Devon MD; Glastonbury Surgery's Medical Director, Christopher Lena, MD, signed for Glastonbury Surgery.[12] The contract recites "Devon is in the business of providing durable medical equipment including portable sequential [deep vein thrombosis] sleeves, crutches, splints, braces and various orthotics and related supplies ('Inventory')," and "Devon agrees to place Inventory and purchased products with [Glastonbury Surgery Center]."[13] They each could end the contract with ninety days notice.[14]

Devon MD claims at Messrs. "DeMaio and Nardella's request," it provided inventory for "Glastonbury's Orthopedic Surgeon[s] and/or the [Partnership] office . . . for billing to" Dynamic Medical or USA Medical.[15] Devon MD claims it inventoried: "(a) Breg Units; (b) 270 Devon-24 Units; (c) 800 Cold Therapy Units [and] 1,300 Sleeves; and (d) 200 Devon 24D 3-chambers sleeves."[16] Devon MD also claims it "made expenditures to develop High-End Cold Therapy Units for the Defendants, [Messrs.] DeMaio and Nardella to market for [the Partnership]."[17]

### *Glastonbury terminates contract.*

On August 8, 2019, Dr. Lena terminated Glastonbury Surgery Center's supply contract with Devon MD by letter to CEO Bennett on letterhead of "Orthopedic Associates of Hartford, P.C."[18] Devon MD reasons "upon information and belief," because Dr. Lena did not send the letter on Glastonbury Surgery Center letterhead, "[Messrs.] DeMaio and/or Nardella requested Dr. Lena to write [this] letter purporting to immediately cancel the Glastonbury Surgery Center's May 16, 2019 Contract with [the Partnership], . . . to divert its business as well from [Devon MD] and

3

the [Partnership]."[19]  The earliest "any Glastonbury [Surgery Center] cancellation could have been effective [would have been] November 8, 2019" because of the ninety-day termination provision in the contract.[20]

Messrs. DeMaio and Nardella "collect[ed] some $200,000 in insurance payments that would otherwise have gone to the [Partnership] for July 2019 when [the Partnership] provided Durable Medical Devices to Glastonbury Surgery Center."[21]  Devon MD "would have had a total of an additional $325,000 in insurance company benefit revenues for August, September, October and early November 2019" if Messrs. DeMaio and Nardella did not induce Glastonbury Surgery to terminate the contract without the required ninety-day notice.  Devon MD claims "a total of $525,000 in lost revenue to the [Partnership] and to [Devon MD] from July 1 through November 8, 2019."[22]  Messrs. DeMaio and Nardella diverted payments and sales to Alledran Med, their Connecticut limited liability company.[23]

### *Devon MD sues for diverted Connecticut business.*

In October 2019, Devon MD sued Messrs. DeMaio and Nardella and Alledran Medical, LLC for diversion of partnership business opportunity, interference with partnership prospective advantage, and fraud.[24]  The named Defendants moved to dismiss arguing: (1) we lacked personal jurisdiction over them; (2) Devon MD failed to state a claim for diversion, interference, or fraud; and, (3) insufficient service of process upon Mr. Nardella.[25]  Defendants submitted a detailed fact affidavit detailing their negotiations and business dealings with Devon MD and its CEO, John Bennett, MD.[26]  We found Devon MD showed a prima facie basis for us to exercise personal jurisdiction over Messrs. DeMaio and Nardella:

> Messrs. DeMaio and Nardella physically entered the forum state on more than one occasion and are alleged to have formed a Partnership while personally visiting Pennsylvania.  As in *Remick*, Messrs. DeMaio and Nardella negotiated the business relationship in Pennsylvania.  During their second visit to Pennsylvania,

4

>CEO Bennett insisted Messrs. DeMaio and Nardella assist Devon land a stock and bill contract with Glastonbury Surgery.  Devon now alleges Messrs. DeMaio and Nardella diverted payments from Glastonbury Surgery, interfered with Devon's contract and, in doing so, committed fraud.  Like *Remick*, the core facts giving rise to these claims—the formation of the Partnership and the introduction to Glastonbury Surgery Center—occurred in Pennsylvania.  Of course, as instructed by *IMO Industries*, we recognize the alleged payment diversions, fraud, and contractual interference all occurred out of the forum.  But the *Calder* test, and *Walden*'s gloss on *Calder*, instruct us to look to the "focal point" of the tort and to consider "meaningful connections" with the forum.  As in *Remick*, because the torts are based on a relationship and contacts formed in Pennsylvania, at this early stage, Devon presents a prima facie showing Pennsylvania is the focal point of its allegations and Messrs. DeMaio and Nardella's conduct meaningfully connects them to Pennsylvania.[27]

But we found no basis to exercise personal jurisdiction over Alledran Medical LLC:

>Mr. Nardella swears he registered the name Alledran Medical as a limited liability company in Connecticut, but it has never been formed and has never operated.  Plaintiff's lone allegation against Alledran is "[u]pon information and belief . . . Defendants [Messrs.] DeMaio and Nardella had registered their own separate entity, Defendant Alledran, LLC and diverted payments from USA Medical."[28]  Based on this allegation and the submitted affidavits, we cannot say Alledran Medical deliberately targeted Pennsylvania.  It did not purposefully direct any activities at Pennsylvania.  The entity is registered in name only.  There are no registered agents of the company.  It is unclear how Alledran would even target or direct activities at Pennsylvania (or anywhere).  There is no specific jurisdiction for this entity under the traditional test.[29]

We granted Devon MD leave to file an amended complaint "pleading a basis for our exercise of personal jurisdiction over Alledran Medical LLC."[30]  Devon MD elected not to file an amended complaint.  In mid-March, Devon MD instead amended the complaint to add a new defendant, Alledran Med, LLC.[31]  Devon MD sues Messrs. DeMaio and Nardella and Alledran Med for diversion of partnership business opportunity and interference with the partnership's prospective economic advantage.  Devon MD does not claim Alledran Med was its partner but claims Mr. Nardella "was working in his capacity as Member/Owner" of Alledran Med throughout the Partnership's formation and operation.[32]

5

**II.     Analysis**

Alledran Med moves to dismiss arguing we lack personal jurisdiction over it. Alledran Med submits evidence disavowing contacts to this forum. Devon MD argues we may exercise specific personal jurisdiction over Alledran Med.[33] We agree with Alledran Med. We find no evidence allowing us to exercise personal jurisdiction over it consistent with due process. We decline to transfer the case but Devon MD is not barred from timely pursuing a tort claim against a non-partner or on post judgment execution theory in a forum which may exercise jurisdiction over Alledran Med.

     **A.     The evidence fails to establish specific jurisdiction.**

          **1.     Mr. Nardella's affidavit.**

Mr. Nardella submits a detailed factual affidavit as a Member of Alledran Med supporting its motion to dismiss. He swears he is a Connecticut citizen.[34] Since 2015, Mr. Nardella has worked with Mr. DeMaio "on a number of informal initiatives to provide orthopedic surgeons" in Central Connecticut with a variety of medical devices.[35] In Fall 2018, Messrs. Nardella and DeMaio "began discussing the possibility of introducing the orthopedic surgeons . . . to the concept of the deep vein thrombosis sleeve."[36] Mr. Nardella swears a deep vein thrombosis sleeve is "similar in concept to a blood pressure cuff, which is applied to a patient's extremities following orthopedic surgery, [to] reduce the occurrence of a deep vein thrombosis occurring."[37] He believed the sleeves presented "significant" growth prospects.[38]

Messrs. DeMaio and Nardella "attempted to attract interest in the use of these [deep vein thrombosis] [s]leeves by orthopedic surgeons, without success."[39] Messrs. DeMaio and Nardella then entered into "an informal relationship with Vanguard Medical, a small durable medical device company in Connecticut" to continue to explore the market for deep vein thrombosis sleeves in central Connecticut.[40] These efforts succeeded as Vanguard began purchasing deep vein

6

thrombosis sleeves from Devon MD, and Devon MD's CEO, John Bennett, MD.[41]  Vanguard employees, in partnership with Messrs. DeMaio and Nardella, would deliver the deep vein thrombosis sleeves to prescribed patients and instruct patients on how to use the sleeve.[42]  Messrs. DeMaio and Nardella ended their relationship with Vanguard in April 2019.[43]

The two then discussed "potential strategies to replace Vanguard in the distribution of [deep vein thrombosis] [s]leeves in the central Connecticut market."[44]  Mr. DeMaio called CEO Bennett, telling him that he and Mr. Nardella were parting ways with Vanguard.[45]

On April 13, 2019, CEO Bennett invited Messrs. DeMaio and Nardella to a business meeting at his home in Villanova, Pennsylvania.[46]  Messrs. DeMaio and Nardella drove down together and arrived at around 4:00 pm.[47]  The next morning, Messrs. DeMaio and Nardella outlined their requests for a deal—Devon MD would need to supply the sleeves, pay for all operation costs and salaries, and split profits—and requested "a written agreement to set forth the final agreement."[48]  According to Mr. DeMaio, "[CEO] Bennett indicated that he was agreeable to the concept in principle, and to the creation of a written agreement to memorialize [the] agreement, however, none was ever created."[49]  After the meeting at CEO Bennett's Villanova home, Messrs. DeMaio and Nardella returned to Connecticut to market Devon MD's deep vein thrombosis sleeves.[50]

In early May,  Mr. Nardella swears he and Mr. DeMaio "had grown increasingly concerned with the lack of a definitive agreement with [CEO] Bennett, and relayed this concern to [CEO] Bennett, who again invited" Messrs. DeMaio and Nardella to his home in Villanova, Pennsylvania for a meeting.[51]  During this second Pennsylvania visit, Messrs. DeMaio and Nardella visited Devon MD's King of Prussia, Pennsylvania office with two staff members "to discuss marketing materials for use in the central Connecticut market."[52]  Later in the day, Messrs. DeMaio and

Nardella asked CEO Bennett to reduce a final agreement to writing, which CEO Bennett said he would review but allegedly never signed.[53]

With Messrs. DeMaio and Nardella still in Pennsylvania, CEO Bennett "insisted" Messrs. DeMaio and Nardella "assist in obtaining what is commonly referred to as a 'stock and bill' contract between Glastonbury Surgery Center LLC and [Devon]."[54] Messrs. DeMaio and Nardella continued attempts to sell deep vein thrombosis sleeves even without a written agreement.[55] But around this time, Mr. Nardella swears the "[deep vein thrombosis] [s]leeves that were being provided by [Devon MD], manufactured in China, were experiencing very high failure rates, much to the displeasure of the prescribing orthopedic surgeons who I work with and know."[56] Mr. Nardella swears "[w]hen [Messrs. DeMaio and Nardella] confronted [CEO] Bennett with these complaints, the relationship … swiftly deteriorated."[57] In July 2019, Messrs. DeMaio and Nardella "discontinued the use of [Devon MD's deep vein thrombosis] [s]leeves."[58]

After discontinuing the marketing of Devon MD's deep vein thrombosis sleeves, Messrs. DeMaio and Nardella joined as Members in Alledran Med.[59] Alledran Med is a limited liability company which Mr. Nardella formed under the laws of Connecticut on or about September 27, 2017.[60] Once Mr. Nardella formed Alledran Med, he "parked it for potential future use."[61] Mr. Nardella swears Alledran Med never conducted operations whatsoever until July 2019, after he and Mr. DeMaio discontinued their relationship with Devon MD and CEO Bennett.[62] Before July 31, 2019, Alledran Med had neither members nor an operating agreement.[63]

Mr. Nardella swears he and Mr. DeMaio entered into an Operating Agreement on July 31, 2019 establishing both of them as founding members of Alledran Med.[64] Alledran never had a bank account until August 12, 2019, when it opened an account with Milford Bank, in Connecticut.[65] Alledran did not have any employees and had no independent contractors or anyone

8

else working for it until July 2019, after terminating its relationship with Devon MD and CEO Bennett.[66]

Mr. Nardella swears Alledran Med has never conducted operations in Pennsylvania, has never attempted business in Pennsylvania, has no property in Pennsylvania, and has never had communications or contact with Devon MD or Bennett.[67] Alledran Med does not solicit orthopedic surgeons or patients in Pennsylvania, nor does it service patients in Pennsylvania.[68] Alledran Med exclusively serves the orthopedic surgical market in central Connecticut.[69] Mr. Nardella swears at no time in their dealings with Devon MD or CEO Bennett were Defendants Nardella or DeMaio acting on behalf of Alledran.[70]

### 2. Devon MD's conclusory response.

Devon MD does not submit a rebuttal affidavit. CEO Bennett does not swear he or Devon MD reasonably believed he formed a partnership with Alledran Med. He does not swear he knew of Alledran Med during his business dealings with Messrs. DeMaio and Nardella.

Absent sworn rebuttal, Devon MD instead offers a smattering of unplead unsworn facts including: (1) Alledran Med's 1099 tax filing, which includes the former Devon MD staffer which it paid as part of the Partnership; (2) an excerpt claimed to be from Mr. Nardella's LinkedIn page stating he was a "Business Owner" of Alledran Med, LLC from "Sep 2017 – present"; and, (3) another excerpt showing Messrs. DeMaio and Nardella used the email registered to Alledran Med to communicate with CEO Bennett.[71] In another section of its memorandum—"Defendants Cannot Consciously Hide LLC's [sic] In An Effort to Misguide Plaintiff's Attempt At Justice"— Devon MD mentions e-mails and text messages which it asserts contradict Mr. Nardella's sworn statement Alledran Med did not operate until July 2019.[72] Devon MD cites e-mails and

9

handwritten notes, but fails to provide much context as to their meaning or significance to our exercise of personal jurisdiction over Alledran Med LLC.

### B. We lack specific jurisdiction over Alledran Med, LLC.

Having examined the submitted evidence, we then turn to Alledran Med's motion to dismiss for a lack of personal jurisdiction. Pennsylvania's long-arm statute allows us to exercise jurisdiction over out-of-state defendants to the maximum extent allowed by the U.S. Constitution.[73] When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper."[74] To meet this burden, the plaintiff must "establish[ ] with reasonable particularity" three elements:

> "First, the defendant must have 'purposefully directed [its] activities' at the forum." *O'Connor*, 496 F.3d at 317 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the plaintiff's claims "must 'arise out of or relate to'" the defendant's activities. *Id.* (quoting *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868). And third, exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[75]

We apply this three-part test to determine whether Devon MD meets its burden.

For the first prong, we look to whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum."[76] Although physical entrance into the forum is not required, there must be "deliberate targeting of the forum."[77] "Unilateral activity of those who claim some relationship with a nonresident defendant" is not sufficient and contacts with a state's citizen taking place outside the forum are not purposeful contacts with the forum itself.[78]

Devon MD fails to show Alledran Med purposefully availed itself of conducting activities in the forum. Devon MD does not claim Alledran Med was a part of the Partnership. It instead

10

relies on a conclusory allegation Mr. Nardella conducted himself as an agent of Alledran Med while negotiating with CEO Bennett. This conclusion is unavailing.

Devon MD fails to submit evidence, through CEO Bennett or other Devon MD employees, it worked with Mr. Nardella while believing him to be an agent of Alledran Med. Devon MD points to Mr. Nardella's LinkedIn page where he purportedly represented himself as a "Business Owner" of Alledran Med. But Mr. Nardella's representations on LinkedIn alone fail to establish an agency relationship as, as far as we know, no Devon MD employee reasonably relied on this LinkedIn page. There is no evidence Mr. Nardella negotiated with CEO Bennett as an agent of Alledran Med. Devon MD's conclusory allegation fails to establish Alledran Med purposefully availed itself of the privilege of conducting activities in the forum. There is no evidence Devon MD expected Mr. Nardella to have no other interests. His formation of a dormant Alledran Med does not impute Alledran Med had anything to do with Devon MD or Pennsylvania.

As to the second prong, our Court of Appeals, since our December 2019 Memorandum, clarified whether a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state depends on the type of claim brought.[79] Intentional torts such as diversion and interference require more: "The defendant [must have] expressly aimed [its] tortious conduct at the forum" to make the forum "the focal point of the tortious activity. And the plaintiff [must have] felt the brunt of the harm in the forum."[80]

In our December 2019 Memorandum, we explained, while "a close call," we could exercise personal jurisdiction over Messrs. DeMaio and Nardella because: they a formed a Partnership in Pennsylvania with a Pennsylvania resident; their alleged partner introduced them to a business contact and directed them to initiate a relationship with this contact during discussions held in Pennsylvania; and, when they returned to Connecticut, they allegedly solidified this contract for

11

the Partnership and began diverting payments from this business opportunity. We emphasized Devon MD bases its claims on diversion of Partnership assets and of Partnership business opportunities and the alleged diversion and opportunity stemmed from Pennsylvania contacts. Because the harm stemmed from Pennsylvania contacts, we found sufficient targeting of Pennsylvania to exercise jurisdiction at this stage over Messrs. DeMaio and Nardella.

Our reasoning with respect to Messrs. DeMaio and Nardella does not extend to Alledran Med. Devon MD fails to provide us a basis to impute Messrs. Nardella and DeMaio contacts to Alledran Med, LLC. We explained above Devon MD fails to adduce evidence of Alledran Med's contacts with Pennsylvania based on an agency theory. Finding no contacts connecting Alledran Med to this forum, we cannot even inspect whether Devon MD's claims arise out of Alledran's contacts.[81]

As Devon MD fails to show how we can exercise personal jurisdiction over Alledran Med based on the first two factors of our review, we need not consider whether our exercise of personal jurisdiction over Alledran Med at this stage comports with traditional notions of fair play and substantial justice. Given Devon MD's inability to meet its burden, we cannot exercise specific jurisdiction over Connecticut citizen Alledran Med, LLC.

### C. We decline to sever and transfer claims against Alledran Med, LLC.

A "district court that lacks personal jurisdiction must at least consider a transfer."[82] Congress provides we "shall" transfer the case rather than dismiss it "if [doing so] is in the interest of justice."[83] We retain "broad discretion" to decline transfer.[84] Our Court of Appeals directs we "may transfer a case at the parties' request or sua sponte" and do not need to "investigate on [our] own all other courts that 'might' or 'could have' heard the case."[85] "Still, [we] must make some

findings under § 1631, at least when the parties identify other courts that might be able to hear their case."[86]

After considering the adduced facts marshalled above, we decline to exercise our discretion to sever and transfer Devon MD's claims against Alledran Med to Connecticut. Transferring this case is not required in the interest of justice. We see no fact or legal basis for a claim against a third-party non-partner for breach of the duty of loyalty owed by partners not to divert partnership assets. If Devon MD wishes to pursue such an action against Alledran Med in a forum where Alledran Med is subject to personal jurisdiction, it may do so within the applicable statute of limitations. We gather from Devon MD's response, in which it does not ask us to transfer the entire case in the event we fail to find jurisdiction over Alledran Med, LLC, it would prefer to litigate in this forum.

### III. Conclusion

We must dismiss the claim against Alledran Med for lack of personal jurisdiction and decide not to transfer under section 1631. Devon MD may, if it wishes, pursue possible remedies from Alledran Med in a forum which may exercise personal jurisdiction over Alledran Med.

---

[1] ECF Doc. No 27 at ¶ 12.

[2] *Id.* at ¶¶ 2, 3.

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶ 7. We refer to this relationship as Devon MD characterizes it, i.e. a "Partnership", without opining whether a partnership existed as a matter of law or fact.

[5] *Id.* at ¶ 8.

[6] *Id.* at ¶¶ 7–9.

[7] *Id.* at ¶ 9.

---

[8] *Id.* at ¶ 14.

[9] *Id.* at Ex. A.

[10] *Id.* at ¶ 14. Devon alleges it paid this staffer, but the staffer "on information and belief [was] working for Alledran." *Id.* at ¶ 11.

[11] *Id.* at ¶ 12.

[12] *Id.* at Ex. C.

[13] *Id*. at Ex. C, p. 17 of 25.

[14] *Id.*

[15] *Id.* at ¶ 13.

[16] *Id.*

[17] *Id.*

[18] *Id.* at ¶ 16.

[19] *Id.*

[20] *Id.*

[21] *Id.* at ¶ 17.

[22] *Id.* at ¶ 19.

[23] *Id.* at ¶ 6. In its original complaint, Devon MD alleged Messrs. DeMaio and Nardella diverted money to Alledran Medical, LLC. *See* ECF Doc. No. 1. Devon MD fails to offer significant insights into the differences between these entities.

[24] ECF Doc. No. 1.

[25] ECF Doc. No. 6.

[26] *Id.*

[27] ECF Doc. No. 11 at pp. 19–20.

[28] ECF Doc. No. 1 at p. 12 of 34, at ¶ 15.

[29] ECF Doc. No. 11 at pp. 16–17.

[30] ECF Doc. No. 12.

---

[31] ECF Doc. Nos. 25, 26.

[32] *Id.*

[33] Devon MD does argue we may exercise general jurisdiction over Alledran Med, and we see no independent basis for exercising general jurisdiction.

[34] ECF Doc. No. 30-3 at ¶ 1.

[35] *Id.* at ¶ 3.

[36] *Id.* at ¶ 5.

[37] *Id.*

[38] *Id.*

[39] *Id.* at ¶ 7.

[40] *Id.* at ¶ 8.

[41] *Id.* at ¶¶ 9–10.

[42] *Id.* at ¶ 10.

[43] *Id.* at ¶ 12.

[44] *Id.*

[45] *Id.* at ¶ 14.

[46] *Id.*

[47] *Id.* at ¶ 15.

[48] *Id.*

[49] *Id.* at ¶ 16.

[50] *Id.* at ¶ 17.

[51] *Id.* at ¶ 18.

[52] *Id.*

[53] *Id.*

[54] *Id.* at ¶ 19.

[55] *Id.* at ¶ 20

[56] *Id.*

[57] *Id.*

[58] *Id.* at ¶ 21.

[59] *Id.*

[60] *Id.*

[61] *Id.* at ¶ 22.

[62] *Id.*

[63] *Id.* at ¶ 23.

[64] *Id.*

[65] *Id.* at ¶ 24.

[66] *Id.* at ¶ 25.

[67] *Id.* at ¶ 26.

[68] *Id.*

[69] *Id.* at ¶ 27.

[70] *Id.* at ¶ 28.

[71] ECF Doc. No. 33 at pp. 11–13.

[72] *Id.* at pp. 16–19.

[73] 42 Pa. Cons. Stat. § 5322(b); *see Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110, 1113–14 (1992).

[74] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) *(quoting Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

[75] *Id.* at 129–30.

[76] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[77] *Id.*

[78] *Id.*

[79] *Danziger & De Llano, LLP*, 948 F.3d at 129.

[80] *Id.* at 130 (citations and quotations omitted).

[81] But we even if it did, we fail to see how Devon MD's claim against Alledran Med can "arise out of or relate to" its contacts unless Devon MD credibly alleges Alledran Med was a Partner in the Partnership.

[82] *Id.* at 132.

[83] 28 U.S.C. § 1631.

[84] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

[85] *Danziger & De Llano, LLP*, 948 F.3d at 132 (citing 28 U.S.C. §§ 1404(a); *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)).

[86] *Id.*